## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **NATHANIEL LAND,** | ) | **CASE NO.** |
| **Plaintiff,** | ) | 1:23-CV-793 |
| **v.** | ) | |
| **NIR ROKAH and BINA – N.R. CONSULTING LTD.,** | ) | **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION** |
| **Defendants.** | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION

Pursuant to Federal Rule of Civil Procedure 65(a), Plaintiff Nathaniel Land ("Mr. Land") submits this memorandum of law in support of his motion for an order preliminarily enjoining Defendants Nir Rokah ("Mr. Rokah") and BINA–N.R. Consulting Ltd. ("BINA") (collectively, "Defendants") from pursuing their claims against Mr. Land in an arbitration before the Financial Industry Regulatory Authority ("FINRA"), styled *Nir Rokah and BINA – N.R. Consulting Ltd. v. Nathaniel I. Land and Brooks, Houghton Securities, Inc.*, FINRA Arbitration No. 22-02356 (the "FINRA Arbitration").

Defendants' pursuit of the FINRA Arbitration is improper. The applicable FINRA Rules do not compel Mr. Land to arbitrate these claims because there was no agreement to arbitrate between Defendants and Mr. Land, and Defendants were not customers of Mr. Land. Defendants did not have any account with Mr. Land, and Mr. Land provided no services to Defendants. Accordingly, Mr. Land cannot be compelled to arbitrate these claims before FINRA.

The only connection Mr. Land has to Defendants and the claims at issue in the FINRA Arbitration is through his limited liability company Clear Landing Capital, LLC ("Clear Landing"), which is *not* a party to the FINRA Arbitration. Defendants do not allege that Clear Landing's corporate form should be disregarded or otherwise plead any facts that would warrant disregarding Clear Landing's corporate form. Instead, Defendants simply conflate Mr. Land and Clear Landing as if they were one and the same in a transparent attempt to avoid joinder of other parties who are necessary to the litigation and who are responsible for Defendants' alleged damages. In short, Defendants filed the FINRA Arbitration against Mr. Land simply because he was registered with FINRA during the events giving rise to the dispute unfolded. But this is not enough to confer FINRA jurisdiction over Mr. Land.

Applying settled case law, federal courts have stepped in to enjoin arbitral proceedings where, as here, the protesting party was not subject to mandatory arbitration under the applicable FINRA rules. Indeed, it is a well-settled principle that a party suffers immediate and irreparable harm as a matter of law if he is forced to arbitrate claims that are not arbitrable. Because Defendants can articulate no basis for arbitration against Mr. Land individually, Mr. Land has a high likelihood of success on the merits of his claim that Defendants have no standing to compel Mr. Land to arbitrate before FINRA. Mr. Land therefore satisfies the elements for injunctive relief, and the Court should grant his motion for a preliminary injunction.

## I.     STATEMENT OF FACTS AND PROCEDURAL HISTORY

In October 2022, Defendants filed a Statement of Claim initiating arbitration proceedings before FINRA against Mr. Land and Brooks, Houghton Securities, Inc. ("BHS"), claiming approximately $3,500,000 in compensatory damages.[1] (*See* Statement of Claim, attached to

---

[1]     BHS has separately filed its own action and request for preliminary injunction in the Southern District of New York seeking to enjoin Defendants from maintaining the FINRA Arbitration against it.

Plaintiff's Complaint ("Compl.") as Exhibit A ("Statement of Claim"); *see also* Declaration of Nathaniel Land ("Land Dec."), attached hereto as Exhibit 1, at ¶4.) Mr. Land was formerly a FINRA-registered securities broker and associated person of BHS, a FINRA Member. (*See* Exhibit L to Statement of Claim.) In the FINRA Arbitration, Defendants assert claims for breach of escrow agreement, conversion, money had and received, and breach of bailment agreement against Mr. Land, and claims for failure to supervise (both under common law/negligence and under the Securities and Exchange Act), negligent hiring, "selling away," and fraud and aiding and abetting fraud against BHS. (Compl., ¶10; Statement of Claim, at pp. 14-29.) Mr. Land denies that he has any liability related to these claims. (*Id*. at ¶10.) Instead of submitting to arbitration, Mr. Land has informed FINRA and Defendants that he has filed the present action for declaratory and injunctive relief.  (*Id*. at ¶11.)

The claims in the FINRA Arbitration arise out of a deal that Defendants struck with non-party (both to this action and to the FINRA Arbitration) Yishai "Jesse" Raphael ("Mr. Raphael") and his company ARIDO brand jewelry ("ARIDO") in August 2018.[2] (Statement of Claim, at pp. 4-6.) Mr. Land was not present at the August 2018 meeting where this agreement was consummated. (*See id*.; *see also* Land Dec., ¶7.) Prior to the agreement between Mr. Raphael and ARIDO on the one hand and Defendants on the other, Mr. Raphael engaged Mr. Land's company Clear Landing Capital, LLC ("Clear Landing") to provide certain consulting services.

---

Mr. Land expects that, with or without the consent of Defendants, he and/or BHS will move to consolidate these matters.

[2]     As is clear from the Statement of Claim, Mr. Raphael and ARIDO brand jewelry are the parties Defendants should be seeking recourse from, not Mr. Land. But, apparently because of a longstanding relationship (as explicitly admitted in the Statement of Claim) between Mr. Raphael and Defendant Mr. Rokah, and because FINRA clearly would have no jurisdiction over Mr. Raphael or ARIDO, Defendants have not named Mr. Raphael or ARIDO as defendants in the FINRA Arbitration. Because FINRA has no jurisdiction over Mr. Raphael or ARIDO, Defendants attempt to concoct claims against Mr. Land individually. Clearly, Defendants brought the FINRA Arbitration so that Mr. Land would be unable to join Mr. Raphael and ARIDO as third-party defendants.

(Land Dec., ¶¶2, 5.) Clear Landing has never been registered with FINRA. (*Id.* at ¶3.) It was only through Clear Landing's agreement with Mr. Raphael and AIRDO that Mr. Land, through Clear Landing, met Defendants. (*Id.* at ¶¶5-6.) Before Clear Landing or Mr. Land ever communicated with Defendants, Mr. Raphael informed Clear Landing that Defendants would be wiring funds to ARIDO via Clear Landing, and Mr. Raphael asked for wiring instructions so that Clear Landing could receive the funds from Defendants. (*Id.* at ¶¶8-9.)

Beginning in August 2018, Defendants began wiring sums of money to ARIDO through Clear Landing, all of which were received in Clear Landing's business checking account. (Land Dec., ¶¶10-11.) While Clear Landing was providing ARIDO with consulting services, Defendants began to complain to Clear Landing and Mr. Land about Mr. Raphael and ARIDO, and the deal that Defendants had struck with them. (*See, e.g.*, Statement of Claim, at pp. 6-10.) At some point Defendants sought to get the money they had wired to ARIDO back and looked to Clear Landing for those funds. (*See id.* at pp. 8-12.)

After the relationship between the parties soured, Mr. Raphael sought to cut ties with Defendants by providing certain artwork to Defendants in lieu of the funds they sent to ARIDO. (*Id.* at pp. 10-12.) To avoid further conflict and potential litigation, Clear Landing agreed to assist Mr. Raphael in his attempt to sever the relationship with Defendants. (*Id.* at pp. 10-12.) That deal ultimately fell through, and when Mr. Raphael and ARIDO refused to give Defendants their money back, Defendants filed the FINRA arbitration. (*See id.* at pp. 10-13.)

All the interactions Mr. Land had with Defendants, Mr. Rokah, and BINA were in his capacity as a member of, and on behalf of, Clear Landing. (Land Dec., ¶12.) As explained *supra*, the interactions between Mr. Land on behalf of Clear Landing and Defendants were had in the course of Clear Landing performing under its consulting agreement between Mr. Raphael and

ARIDO. (Land Dec., ¶¶6, 13.) Mr. Land did not do any business with either Mr. Rokah or BINA in his personal capacity. (*Id.*) This is clearly demonstrated by the various exhibits attached to Defendants' Statement of Claim, which bear Clear Landing's heading and contact information. (*Id.*; *see also* Exhibits D, E, G, H, I, and J to Statement of Claim.)

Given that Mr. Land is the sole member of Clear Landing, it is not surprising that all of Defendants' interactions with Clear Landing came through Mr. Land. (Land Dec., ¶2.) Neither Clear Landing nor Mr. Land agreed to hold any funds in escrow. (Land Dec., ¶7.)  Mr. Land in his individual capacity never entered into any agreement with Defendants, never sold any goods to Defendants, and never provided any services to Defendants, securities-related or otherwise. (Land Dec., ¶¶12-16.)

## II.    ARGUMENT AND CITATION TO AUTHORITY

Defendants' Statement of Claim fails to set forth any facts establishing that their claims against Mr. Land are arbitrable. Defendants' claims, to the extent they relate to Mr. Land at all, are exclusively tied to their alleged dealings with Mr. Land's limited liability company, Clear Landing. (Land Dec., ¶¶5-16; *see also generally* Statement of Claim.) In their Statement of Claim, Defendants simply conflate Mr. Land with Clear Landing, ignoring their status as separate legal entities as well as the clear and obvious evidence to the contrary, including the exhibits attached to the Statement of Claim bearing Clear Landing's heading and information. (*See, e.g.*, Exhibits D, E, G, H, I, and J to Statement of Claim; *see also* Land Dec., ¶12.) Moreover, and just as critical, the Statement of Claim itself makes clear that the only agreement reached was between Defendants and Mr. Raphael. (*See* Statement of Claim, at pp. 4-6; *see also* Land Dec., ¶¶12-16.)

Simply put, there is no basis to find any obligation on Mr. Land's part to arbitrate Defendants' claims. Defendants do not allege (nor could they) that they ever entered into an

arbitration agreement with Mr. Land. (*See generally* Statement of Claim; *see also* Land Dec., Land Dec., ¶14.) Defendants also cannot be considered "customers" of Mr. Land's under the applicable FINRA rules because Defendants never purchased any goods from Mr. Land and Mr. Land did not enter into any agreement with, or provide any services to, Defendants. (Land Dec., ¶¶5-16.) Defendants' agreement was with ***Mr. Raphael***, not with Mr. Land. (*See* Statement of Claim, at pp. 4-6; Land Dec., ¶¶5-16.) All the interactions between Defendants and Mr. Land were undertaken by Mr. Land on behalf of Clear Landing in the course of performing this agreement, not by Mr. Land in his personal capacity. (Land Dec., ¶¶5-16.) There is simply no basis to conclude that Mr. Land is required to arbitrate before FINRA.

## MR. LAND SATISFIES THE APPLICABLE LEGAL STANDARDS

### A.    The question of arbitrability is for the court to decide, not the arbitrators.

As a preliminary matter, the question of arbitrability is properly before this Court since the Second Circuit has held that in this specific context "the question of arbitrability is for the court to decide." *UBS Sec. LLC v. Leitner*, 735 F. App'x 16, 17-18 (2d Cir. 2018) (holding in suit to enjoin FINRA arbitration from proceeding that as "a threshold matter, the District Court was entitled to determine whether Leitner's claims are arbitrable") (quoting *Citigroup Glob. Mkts. Inc. v. Abbar*, 761 F.3d 268, 274 (2d Cir. 2014)). There is no agreement between Mr. Land and Defendants regarding arbitrability (*See generally* Statement of Claim; Land Decl., ¶14), and therefore the Court should determine whether Defendants' claims are arbitrable. *See id.* Furthermore, as the Second Circuit has explained in this context, because "the parties here are disputing the existence of an obligation to arbitrate, not the scope of an arbitration clause, the general presumption in favor of arbitration does not apply." *Citigroup Glob. Markets Inc. v. Abbar*, 761 F.3d 268, 274 (2d Cir. 2014).

**B.    Mr. Land has established the elements required for obtaining a preliminary injunction.**

In the Second Circuit, a party seeking a preliminary injunction must "show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (quotation marks omitted) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979)).

The Second Circuit Court of Appeals has reaffirmed the "serious questions" standard in lieu of the "likelihood of success on the merits" standard, noting that preliminary injunctions "should not be mechanically confined to cases that are simple or easy." *Id*. The "serious questions" standard "permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Id*. The issuance of a preliminary injunction is committed to the sound discretion of the district court. *See Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (the "district court has wide discretion in determining whether to grant a preliminary injunction") (quoting *Moore v. Consolidated Edison*, 409 F.3d 506, 511 (2d Cir.2005)).

Courts in the Second Circuit routinely intercede to enjoin FINRA arbitrations rather than allow a party to be forced to submit to arbitration claims it did not agree to arbitrate brought by claimants who are not its customers. *See, e.g.*, *Leitner*, 735 F. App'x at 18-19 (affirming district court's entry of preliminary injunction enjoining defendants from maintaining FINRA arbitration where there was no agreement to arbitrate and defendants could not be considered customer of plaintiff under FINRA rules); *Abbar*, 761 F.3d at 277 (same); *VCG Special Opportunities Master*

*Fund Ltd.*, 598 F.3d at 40 (same); *SunTrust Banks, Inc. v. Turnberry Cap. Mgmt. LP*, 945 F. Supp. 2d 415, 426 (S.D.N.Y. 2013) (entering permanent injunction restraining defendant from pursuing FINRA arbitration against plaintiff where there existed no arbitration agreement between the parties and defendant could not be considered plaintiff's customer under FINRA rules), *aff'd*, 566 F. App'x 32 (2d Cir. 2014); *UBS Sec. LLC v. Voegeli*, 684 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2010) (entering declaratory judgment and permanent injunction restraining defendant from prosecuting their claims against plaintiff in FINRA arbitration), *aff'd*, 405 F. App'x 550 (2d Cir. 2011). This Court should do the same given Mr. Land satisfies the applicable legal standard.

> ### 1. *Mr. Land will suffer irreparable harm if Defendants are not enjoined from pursuing the FINRA arbitration.*

Under well-settled law, Mr. Land indisputably satisfies the first element for a preliminary injunction—irreparable harm. Absent a preliminary injunction enjoining the FINRA Arbitration, Mr. Land will be irreparably harmed as a matter of law, as the Second Circuit has repeatedly held, because he will be forced to expend time and resources arbitrating an issue that is not arbitrable. *See, e.g.*, *UBS Sec., LLC v. Voegeli*, 405 F. App'x 550, 552 (2d Cir. 2011) ("Being forced to arbitrate a claim one did not agree to arbitrate constitutes an irreparable harm for which there is no adequate remedy at law"); *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (holding that irreparable harm occurs where a movant is "forced to expend time and resources arbitrating an issue that is not arbitrable"); *see also Goldman, Sachs & Co. v. N. Carolina Mun. Power Agency No. One*, No. 13 CIV. 1319 PAC, 2013 WL 6409348, at *8 (S.D.N.Y. Dec. 9, 2013) ("As a matter of law, there is irreparable harm when a party is compelled to arbitrate ... without having agreed to arbitration because that party is forced to expend time and resources arbitrating an issue that is not arbitrable.") (quotation marks and

citations omitted); *ProShares Tr. v. Schnall*, 695 F. Supp. 2d 76, 80 (S.D.N.Y. 2010) ("plaintiffs will suffer irreparable harm if compelled to arbitrate [with FINRA] defendants' claims without having agreed to arbitration, since a party cannot be required to submit to arbitration any dispute which it has not agreed to arbitrate"). Accordingly, Mr. Land has established the element of irreparable harm for purposes of injunctive relief.

### 2. Mr. Land is likely to succeed on the merits.

The second prong for injunctive relief, likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief, is also met here. Mr. Land has a strong likelihood of succeeding on his claim that there is no basis upon which Defendants may rely to compel him to arbitration. First, there is no arbitration agreement—or any agreement for that matter—between Mr. Land and the Defendants. Second, Defendants cannot rely upon FINRA Rule 12200, which mandates arbitration between a broker/dealer and a customer, because they are not "customers" of Mr. Land's for purposes of that rule.

#### (a) There is no arbitration agreement between Mr. Land and the Defendants.

The Statement of Claim does not, and cannot, allege that Mr. Land entered into an arbitration agreement, or any agreement at all, with either of the Defendants, because no such agreement exists. (*See generally* Statement of Claim; *see also* Land Dec., ¶¶12-16.) Accordingly, there is no relevant arbitration agreement between Defendants and Mr. Land that could support compelling Mr. Land to FINRA arbitration. (Land Dec., ¶¶12-16.)

#### (b) Defendants are not Mr. Land's "customers" under FINRA Rule 12200.

Without an agreement with Defendants to arbitrate, the only way Mr. Land could be forced to arbitrate Defendants' claims is if the Defendants can be considered Mr. Land's

"customer" under FINRA Rule 12200. *See, e.g.*, *Leitner*, 735 F. App'x at 18-19 (noting that because "the parties did not enter into a written arbitration agreement, UBS Securities is obliged to arbitrate the dispute only if Leitner was its customer within the meaning of Rule 12200"). But neither Mr. Rokah nor BINA is a "customer" of Mr. Land's for purposes of that rule. As relevant here, FINRA Rule 12200 provides that FINRA members must arbitrate if a "dispute is between a *customer* and a member or associated person of a member" *and* the "dispute arises in connection with the business activities of the member or the associated person…." FINRA Rule 12200 (emphasis added). (A true and correct copy of the FINRA Rule 12200 is attached hereto as Exhibit 2.)

The FINRA code does not define who is a customer for purposes of Rule 12200; it merely indicates that a "customer" cannot be "a broker or dealer." *See* FINRA Rule 12100(i). (A true and correct copy of the FINRA Rule 12100 is attached hereto as Exhibit 3.) In analyzing the meaning of a "customer," the Second Circuit has explained that "a 'customer' under FINRA Rule 12200 is one who, while not a broker or dealer, either (1) purchases a good or service from a FINRA member, or (2) has an account with a FINRA member." *Abbar*, 761 F.3d, at 275. Here, it cannot reasonably be questioned that both Defendants never purchased a "good or service" from Mr. Land or that neither Defendant had "an account" with Mr. Land.

### *(i) Mr. Land sold no goods to Defendants.*

Neither Defendant purchased anything from Mr. Land, something that Defendants themselves expressly admit. (*See* Statement of Claim, at p. 2 (explaining that Defendants received "nothing" in exchange for the funds they allegedly deposited with Mr. Raphael and ARIDO); *see also* Land Dec., ¶15.) Thus, the provision of goods cannot be a basis for finding that either Defendants was a customer of Mr. Land's under FINRA Rule 12200. (*See id*.)

*(ii) Mr. Land did not provide any services to Defendants.*

The only allegation in the Statement of Claim that could plausibly be interpreted to allege that Mr. Land provided "services" to Defendants is their claim that Mr. Land agreed to hold Defendants' funds in escrow. (*See* Statement of Claim, at pp. 14-15.) As explained more fully below, Defendants' claim that they established an escrow agreement with Mr. Land fails as a matter of law for several reasons.

First, there was never *any agreement* between Defendants and Mr. Land personally. (Land Dec., ¶¶12-14.) That includes for escrow services. (Land Dec., ¶7, 12-14.) To the extent that Defendants' allegations can be interpreted to allege the existence of such an agreement, for example by alleging they sent their funds to Mr. Land and had various contact and interactions with Mr. Land, those allegations are insufficient. Defendants, as part of their oral agreement with Mr. Raphael (Statement of Claim, at pp. 4-6), interacted with Mr. Land on behalf of his company Clear Landing, not Mr. Land in his individual capacity. (Land Dec., ¶¶12-16.) Clear Landing had previously agreed to provide Mr. Raphael and his company ARIDO brands with certain consulting services, and Mr. Land's interactions with Defendants were exclusively on behalf of Clear Landing in furtherance of those consulting services. (Land Dec., ¶¶5-6, 12-16.) Defendants' wire transfers were sent to *Clear Landing's* business checking account, not any of Mr. Land's personal bank accounts. (Land Dec., ¶¶8-11.) This is also reflected in the exhibits attached to the Statement of Claim, which demonstrate that Mr. Land was acting in his capacity as a member, and on behalf of, Clear Landing, not in his individual capacity. (*See, e.g.*, Exhibits D, E, G, H, I, and J to Statement of Claim; *see also* Land Dec., ¶12.)

Second, the allegations in the Statement of Claim make clear that *even if* an agreement for escrow services or a deposit was reached, that agreement was between Defendants and non-

party Mr. Raphael, not Mr. Land. (*See* Statement of Claim, at pp. 4-6.) As Defendants expressly admit, Mr. Land was not present when the alleged deal underpinning Defendants' claims was reached, foreclosing any argument that an escrow, or any other, agreement was reached with Mr. Land. (*Id.*; *see also* Land Dec., ¶7.) The timeline of events as alleged by Defendants further illustrates the absence of an agreement. Indeed, Defendants allege that Mr. Land "knew *or should have been aware*" that the funds sent to Clear Landing were to be held in escrow, (Statement of Claim, at p.14) (emphasis added), and the evidence shows that they began sending funds to Clear Landing prior to Mr. Rokah ever meeting or even communicating with Mr. Land. (Land Dec., ¶8.)

New York law is clear that an escrow agreement requires a meeting of the minds, and one party cannot unilaterally create an escrow agreement simply by sending funds to another party with the intent or desire that they hold the funds in escrow. *See, e.g.*, *Goldberg, Sager & Associates v. Gilewski*, 58 N.Y.S.3d 873, *2 (N.Y. Civ. Ct. 2017) (noting that "[c]alling an act an escrow does not necessarily make it such," and holding that there "must be a valid contract between the parties, and, absent such a contract, delivery of the instrument to a third person does not constitute a transaction in escrow") (quotation marks omitted); *see also Shapiro v. Snow Becker Krauss P.C.*, 617 N.Y.S.2d 470, 470 (N.Y. App. Div. 1st Dept. 1994) (defendant law firm could not be held liable as escrow agent where the alleged agreement between the escrow parties was not agreed to by the firm and the deposit of a check into the firm's escrow account did not transform the firm into the escrow agent). As a matter of law, therefore, no escrow agreement could have been reached where: (1) neither Mr. Land nor any other representative of Clear Landing was present at the meeting at which the agreement supposedly was reached (Statement of Claim, at pp. 4-6); and (2) the funds that were allegedly to be held in escrow were

sent *before* there was any communication between Clear Landing or Mr. Land and Defendants. (Land Dec., ¶¶5-8.)

Additionally, even if Clear Landing's actions could somehow be imputed to Mr. Land in his individual capacity (they cannot), and even if it could be found that an escrow agreement was reached (it was not), at least one court has found that simply providing escrow services is insufficient to establish a "customer" relationship under FINRA Rule 12200. In *Virchow Krause Capital, LLC v. North*, 2012 WL 1952731, *2-4 (N.D. Ill. May 30, 2012), plaintiff North was an investor who sued defendant Baker, an independent broker that acted as a placement agent in the disputed transaction. *Id*. at *1-2. North purchased certain notes issued by a third party, and Baker received the money that North paid to the third party for the notes and placed that money into an escrow account. *Id*. North was also an underwriter for the investment and performed other ministerial tasks like paperwork related to the transaction. *Id*. North filed a FINRA arbitration claim against Baker and Baker filed suit in federal court seeking to restrain North from maintaining the FINRA arbitration against him. *Id.*

The key question in the case was whether North was a "customer" of Baker's under FINRA Rule 12200. *Id.*, at *2-3. The Court found that Baker's relationship and contacts with North were too remote and attenuated to find that North was a "customer" of Baker's. *Id*. at *2-4. North argued that Baker's escrow and handling of the money and paperwork, as well as an email indicating that North could contact Baker if he needed any "further assistance" showed he was a customer, but the Court rejected this argument. *Id.* The Court held that this evidence did "not show that Baker provided investment services or advice to North concerning the Investment or had any involvement in North's decision to invest in the Investment." *Id*. at *3. The Court further stated that "Baker's relationship with North was the type of 'tenuous' and 'attenuated'

relationship that courts have concluded would not create a customer relationship under FINRA." *Id.*, at \*4. The same is true here: even if it could be found that Clear Landing's actions could be imputed to Mr. Land, which Defendants do not allege, and that an escrow agreement was established, the establishment of the escrow arrangement is insufficient and Mr. Land's relationship to Defendants is too tenuous and attenuated to find that Defendants were his customer for purposes of FINRA Rule 12200. *See id.*

Finally, courts have (sensibly) concluded that an associated person of FINRA, like Mr. Land, is compelled to "arbitrate disputes only when the dispute arises in connection with the business activities of the associated person ***undertaken in his or her capacity as an associated person of the FINRA member***." *See, e.g., Pictet Overseas Inc. v. Helvetia Trust*, 905 F.3d 1183, 1188-89 (11th Cir. 2018) (emphasis added) (holding that even if a claimant is deemed a "customer" of the associated person, the dispute must arise in connection with the business activities undertaken as an associated person of the FINRA member). Here, the dispute did not arise in connection with activities undertaken by Mr. Land as an associated person of BHS. To the contrary, the activities undertaken by Mr. Land were undertaken in his capacity as a representative, and on behalf of, Clear Landing, which has never been registered with FINRA. (Land Dec., ¶¶3, 10-16.) Defendants state as much in their Statement of Claim, alleging that Mr. Land's activities constituted "selling away" or unauthorized business activities *outside* of Mr. Land's association with BHS.[3] (Statement of Claim, at pp. 24-26.) Because Defendants admit

---

[3]    Defendants' "selling away" claim does not change the result in this case. First, the claims do not relate to Mr. Land's *investment banking or securities business activities*, as they must to subject him to FINRA's jurisdiction. *See, e.g., Lincoln Fin. Sec. Corp. v. Foster*, 2021 WL 1197534, \*4 (D. Conn. March 29, 2021) (reviewing case law and holding that in the Second Circuit, "arbitration under the FINRA Code may be compelled against a FINRA member or its associated person when: (1) requested by the purchaser of a good or service from a FINRA member or associated person, or an account holder and (2) **the dispute arises in connection with the investment banking or securities business activities of a member or associated person**.") (emphasis added). As detailed herein, neither Mr. Land nor Clear

that Mr. Land did not engage in the activities complained of in his capacity as an associated person of FINRA member BHS, Mr. Land cannot be compelled to arbitrate before FINRA. *Pictet*, 905 F.3d at 1188-89.

> *(iii) Defendants did not have an account with Mr. Land.*

Finally, Defendants did not have an "account" with Mr. Land—if they had any account, they had an account with Clear Landing. As detailed above, and as supported by the exhibits attached to the Statement of Claim, all of Mr. Land's interactions (including the wire transfers) with Defendants were on behalf of Clear Landing, the funds Defendants sent were wired to Clear Landing, not Mr. Land, and they were received in Clear Landing's business checking account. (*See* Exhibits D, E, G, H, I, and J to Statement of Claim; Land Dec., ¶¶8-11.) Defendants, therefore, did not have any "account" with Mr. Land. (*See id*.)

### III.  CONCLUSION

Mr. Land is entitled to a preliminary injunction enjoining Defendants from pursuing their arbitration claims against Mr. Land in the FINRA Arbitration. Under well-settled precedent, Mr. Land will suffer irreparable harm as a matter of law if an injunction is not entered because he will be forced to expend time and resources arbitrating an issue that is not arbitrable. Mr. Land is also likely to prevail on the merits because the law is clear that Mr. Land has no obligation to arbitrate Defendants' claims. Mr. Land did not agree to arbitrate these claims, and Defendants are not his "customers" for purposes of FINRA Rule 12200. Accordingly, Mr. Land respectfully

---

Landing provided any services to Defendants. Putting that aside, Defendants expressly allege that the services at issue were in the nature of escrow or bailment, not investment banking or securities business activities. *See id*. Moreover, as in *Pictet*, the claims at issue in this case relate to Clear Landing, not Mr. Land in his individual capacity, and Clear Landing is *not* (and has never been) a FINRA member. (Land Dec., ¶3.) Therefore, the dispute does not "arise[] in connection with the business activities of the associated person [Mr. Land] undertaken in his [] capacity as an associated person of the FINRA member [BHS]." *Pictet Overseas Inc.*, 905 F.3d at 1188-89; *see also Foster*, 2021 WL 1197534 at *4.

requests that the Court (1) enjoin Defendants from proceeding with their claims against Mr. Land in the FINRA Arbitration; and (2) grant Mr. Land any further relief it deems proper.

Respectfully submitted this 31st day of January, 2023.

**PARKER, HUDSON, RAINER & DOBBS LLP**

*/s/ V. Justin Arpey*
V. Justin Arpey
New York Bar No. 5465901
Erik J. Badia
(*Pro Hac Vice Application Forthcoming*)
303 Peachtree Street, NE, Suite 3600
Atlanta, Georgia 30308
vja@phrd.com
ebad@phrd.com
Telephone: (404) 523-5300
Facsimile: (404) 522-8409

*Counsel for Plaintiff Nathaniel Land*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day filed the within and foregoing **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION** upon all parties to this matter by electronically filing a copy of same with the Court's CM/ECF system, which will automatically send an electronic copy to all counsel of record, and by sending a copy via electronic mail and U.S. Mail, addressed as follows:

Jenice L. Malecki, Esq.
Malecki Law
11 Broadway, Suite 715
New York, New York 10004
Jenice@MaleckiLaw.com

This 31st day of January, 2023.

*/s/ V. Justin Arpey*
V. Justin Arpey