**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **NATHANIEL LAND,** ) ) ) **Plaintiff,** ) ) v. ) ) **NIR ROKAH and BINA – N.R.** ) **CONSULTING LTD.,** ) ) **Defendants.** ) ) | **CASE NO.** **1:23-cv-000793-PAC** **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

## Introduction

Defendants' response in opposition to Plaintiff Nathaniel Land's motion for preliminary injunction only serves to underline the fact that FINRA does not have jurisdiction over the claims that Defendants have asserted against him. Throughout their response Defendants continue to conflate the actions and identities of Mr. Land and Clear Landing Capital, LLC, just as they did in the Statement of Claim they filed with FINRA. Mr. Land and Clear Landing, however, are two separate legal entities, and Defendants did not allege an alter ego claim before FINRA or any facts that would support such a claim. In sum, Defendants did not attempt to pierce the corporate veil in the arbitration such that Mr. Land's actions or inactions on behalf of Clear Landing could be imputed to him personally—they merely alleged various wrongdoing against Clear Landing throughout the Statement of Claim and then listed Mr. Land, instead of Clear Landing, as a party to the arbitration. This is improper, and for this reason alone, the Court should enjoin the arbitration.

Largely ignoring this issue in their Response, Defendants pin their jurisdictional hopes on the failure to supervise and selling away claims they assert against Brooks Haughton Securities,

Inc. ("BHS"), the FINRA member firm with which Mr. Land was associated during the events giving rise to this dispute. But these claims are fatally flawed and therefore cannot serve to confer FINRA jurisdiction over Mr. Land. Defendants do not establish, nor could they, based on their own allegations, that a "private securities transaction" occurred that would confer jurisdiction over Mr. Land under FINRA Rule 12200. According to Defendants' own Statement of Claim, Defendants reached an agreement, again, not with Mr. Land, but with non-party Yishai "Jesse" Raphael ("Mr. Raphael"), for the ***potential*** sale of jewelry. Putting aside whether the intended transaction would have constituted a securities transaction (it would not have), the contemplated transaction never occurred. This is not disputed, as the central basis of Defendants' claims against Mr. Land is that Defendants escrowed certain funds with Clear Landing, that those funds were supposed to be returned to them, and that they were not. The alleged failure to return escrow funds can in no way be considered a "private securities transaction." The case law Defendants cite in support of their failure to supervise/selling away argument, which, tellingly, does not include a single case involving the alleged breach of an escrow agreement, only proves this point.

In sum, the common law claims that Defendants assert against Mr. Land arising out of the alleged breach of an escrow agreement should have been brought in New York state (or federal) court, and Defendants know it. They simply are attempting to force Mr. Land to arbitrate before FINRA because: (1) they cannot satisfy the elements of their legal claims; and (2) they know that Mr. Land cannot third-party Mr. Raphael, a long-time friend of Mr. Rokah's, into the arbitration. Unfortunately for Defendants, their forum shopping exercise is ultimately doomed because Mr. Land is not subject to FINRA jurisdiction under the facts alleged.

**Argument and Citation of Authority** [1]

A. **Defendants have misstated the standard applicable to Plaintiff's inunction motion.**

Defendants, citing *Scotto v. Mei*, 219 A.D.2d 181, 182 (1st Dept. 1996), claim in their Response that "[p]roof establishing [the required injunction] elements must be by affidavit and other competent proof, with evidentiary detail…. [and i]f key facts are in dispute, the [injunctive] relief will be denied." (Defendants' Memorandum of Law in Opposition, Dkt. 17 ("Response"), p. 13.) This is not the applicable standard here. *Scotto*, a New Yok state court case, does not apply here because this is not a diversity case, and, even if it were, the standards for establishing an injunction pursuant to Federal Rule of Civil Procedure Rule 65 are governed by federal law. *See Baker's Aid v. Hussmann Foodservice Company*, 830 F.2d 13, 15 (2d Cir. 1987) (even in diversity actions the question whether a preliminary injunction should be granted is generally one of federal law).[2] That this Court may consider and weigh evidence, including factual disputes, when ruling on requested injunctive relief under Rule 65 is well established. *See, e.g.*, *Sec. & Exch. Comm'n v. N. Am. Rsch. & Dev. Corp.*, 511 F.2d 1217, 1218 (2d Cir. 1975) (holding it was proper for the district court to allow party to use factual evidence adduced at hearing on preliminary injunction at later trial on the merits); *see also Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("A party thus is not required to prove his case in full at a preliminary-injunction hearing, … and the *findings of fact* and conclusions of law made by a

---

[1] Mr. Land does not respond in this brief to the purported "counterclaim" included in Defendants' response because this claim is procedurally improper. Instead, Mr. Land will separately file an answer to Defendants' counterclaim for injunctive relief contained in Defendants' answer, as required under Rule 12(a)(1)(B).

[2] *See also Bank of Am., N.A. v. Won Sam Yi*, 294 F. Supp. 3d 62, 77 (W.D.N.Y. 2018) ("it seems well-settled that '[t]he question whether a preliminary injunction should be granted is generally one of federal law even in diversity actions, though state law issues are sometimes relevant to the decision to grant or deny'") (quoting *Baker's Aid*, 830 F.2d at 15). Mr. Land's research indicates that *Scotto* has not been cited by any federal court in the Second Circuit as applying to the federal standards for injunctive relief under Rule 65.

court granting a preliminary injunction are not binding at trial on the merits") (internal citation omitted) (emphasis added).

    **B.    Defendants fail to establish that they were customers of Mr. Land's for purposes of FINRA's Rule 12200.**

        *1.    Per their own allegations, Defendants, at most, entered into an escrow agreement with Clear Landing—not Mr. Land.*

In their response, Defendants did little, if anything, to address the fatal flaw underlying their attempt to force Mr. Land to arbitrate before FINRA, i.e., that Defendants' claims arise out of their alleged dealings, and an alleged agreement, with Clear Landing, LLC, a limited liability company that has never been registered with FINRA. (Land Dec., ¶¶2-16; *see also generally* Statement of Claim, attached to Complaint, Dkt. 1, as Exhibit A ("SOC").)

Consistent with their Statement Claim, Defendants did not argue in their response that Clear Landing is the alter ego of Mr. Land such that Clear Landing's acts or inactions should be imputed to Mr. Land personally. (*See generally* SOC; Response); *see also, e.g.*, *Treeline Mineola, LLC v. Berg*, 21 A.D.3d 1028, 1029 (N.Y. App. Div. 2d Dept. 2005) ("the corporate form is not lightly to be disregarded. Indeed precedent is clear that courts will pierce the corporate veil only to prevent fraud, illegality or to achieve equity. This is true even in situations such as this where the corporation is controlled or dominated by a single shareholder."). Instead, just as they did in the Statement of Claim, Defendants continue to allege wrongdoing by Clear Landing, and, without any supporting allegations, simply conclude that Mr. Land is responsible. Defendants' response, just like their Statement of Claim, reads like a complaint against Clear Landing. By way of example, Defendants allege the following in their response:

- The "verbal agreement" between Mr. Rokah and Mr. Raphael included terms wherein "Mr. Rokah would deposit a total of $2 million in a <u>Clear Landing</u> bank account …. (b) the funds

invested by Mr. Rokah would be held by <u>Clear Landing</u> as a deposit…." (Response, p. 6) (emphasis added);

- Defendants memorialized their agreement through the "*Clear Landing Deposit Agreements*," which provide that they are an "[a]greement between Clear Landing Capital LLC and BINA–N.R. CONSULTING, LTD." (Response, pp. 7-8) (emphasis in original);

- Mr. Rokah deposited funds with "<u>Clear Landing</u> on six separate occasions totaling $2 million." (Response, pp. 7) (emphasis added).

Defendants simply make no allegations that would authorize a court (or FINRA) to pierce the corporate veil of Clear Landing. (*See id.*) Sure, Defendants allege in their response that Mr. Land sometimes communicated with Mr. Rokah "through his personal Gmail account" and that Mr. Land exchanged text messages with Mr. Rokah. (*See* Response, pp. 6-7.) But, as Mr. Land pointed out in his initial briefing, he is the only member of Clear Landing, and therefore, he is the only person that could have dealt with Mr. Rokah on behalf of Clear Landing. (*See* Dkt. 5, Memorandum of Law in Support of Injunction ("Injunction Memo"), p. 5.) The idea that these communications could provide a legal basis to pierce the corporate veil of Clear Landing, which, again, Defendants did not assert in their Statement of Claim, is a nonstarter. *See, e.g., Skanska USA Bldg. Inc. v. A. Yards B2 Owner, LLC*, 40 N.Y.S.3d 46, 54 (N.Y. App. Div. 1st Dept. 2016) ("The party seeking to pierce the corporate veil bears the heavy burden of showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury.") (quotation marks omitted). The fact that Mr. Land, the sole member of Clear Landing, signed the "Clear Landing Deposit Agreements" is of no import. As

Clear Landing's sole member, Mr. Land was literally the only person who could. (Land Dec., ¶2.)

Grasping at straws, Defendants cite to a "*draft, unsigned*" document and state that Mr. Land is "participating in **what appears to be** his personal capacity." (Response, p. 7) (italics in original) (bold emphasis added). Defendants' reliance on an unsigned draft only shows their desperation. Defendants also attempt a sleight of hand by pointing the Court to text and email communications between Mr. Rokah and Mr. Land about the "deal" and the "investment," insinuating that Mr. Land was personally involved. (*See* Response, pp. 6-9.) But these communications by Mr. Land were made on behalf of Clear Landing, in Clear Landing's capacity as a consultant for Mr. Raphael and ARIDO (*see* Land Dec., ¶¶5-6), and more to the point, Defendants fail to mention that the "deal" and "investment" they are referring to is the "verbal agreement" reached by "Mr. Rokah and Mr. Raphael" in August 2018 at Mr. Rokah's house, to which Mr. Land was indisputably not a party. (Response, p. 6) (emphasis added.)

> 2. *Defendants' allegations make clear that they had no agreement with Clear Landing, much less Mr. Land, and therefore Defendants cannot be considered customers of Mr. Land's.*

Not only have Defendants sued the wrong individual, but Defendants' allegations also demonstrate that they never consummated an escrow agreement with Clear Landing (or Mr. Land). According to Defendants, Mr. Land was not present when they reached a "verbal agreement" with Mr. Raphael. (SOC, pp. 4-5; Land Dec., ¶7.) Moreover, Defendants admit they began wiring funds to Clear Landing (not Mr. Land) in August 2018—before Defendants ever even communicated with Mr. Land. (Land Dec., ¶¶7-11; Response, p. 7.) In their Response, Defendants do not address the fact that, per their own allegations, no escrow agreement could have been reached between them and Clear Landing, as under New York law, a meeting of the

minds is required to establish an escrow relationship. (*See* Injunction Memo, pp. 12-13, and cases cited therein.) Since no meeting of the minds occurred, there can be no customer relationship between Mr. Land and Defendants that would confer FINRA jurisdiction.

To the extent any minds met, Defendants admit it was those of Messrs. Rokah and Raphael—not Mr. Land. In his sworn declaration Mr. Rokah averred that "Mr. Rokah and Mr. Raphael reached a verbal agreement during their meeting at Rokah's house that included the following: (a) Mr. Rokah would deposit a total of $2 million in a Clear Landing bank account …. (b) the funds invested by Mr. Rokah would be held by Clear Landing as a deposit…." (Response, p. 6) (emphasis added.) Under these facts, Defendants were not "customers" of Mr. Land's, and their improper and unpersuasive attempts to conflate his actions with those of Clear Landing do not change that.

                3.      *The case law cited by Defendants does not support their position.*

Defendants rely on *Triad Advisors, Inc. v. Siev*, 60 F.Supp. 3d 395, 397 (E.D.N.Y. 2014), attempting to show that they were "customers" of Mr. Land under the FINRA Rules. But that case is distinguishable for several reasons. First and foremost, it was undisputed in *Siev* that the associated person, Mr. Tehan, solicited and worked with the investors to find them investments and that he did so either in his individual capacity and/or in his capacity as investment advisor for FINRA-member firm Triad Advisors, Inc. *See Siev*, 60 F. Supp. 3d at 395-96. Here, in contrast, Mr. Land did not reach any agreement with, or provide any services to, Defendants in his individual capacity. (*See* Land Dec., ¶¶5-16; Injunction Motion, pp. 4-5.) Regardless, unlike the plaintiff in *Siev*, Defendants do not allege that Clear Landing and/or Mr. Land provided investment advice or sold them a security. (*See generally* SOC.) Rather, notwithstanding Defendants' longwinded recitation of technical, financial-industry-related language, Defendants

merely allege claims for "CONVERSION, BAILMENT, BREACH OF ESCROW AND MONEY HAD & RECEIVED" against Mr. Land, all of which are based on the alleged breach of an escrow agreement. (*See* SOC, p. 14.) There is no investment at issue.

The rest of the cases cited by Defendants to show that they were "customers" of Mr. Land's under FINRA Rule 12200 are distinguishable for the same reasons. *See, e.g.*, *Gilmore v. Brandt*, 2011 U.S. Dist. LEXIS 125812, 2011 WL 5240421 (D. Colo. 2011) (registered person advised client to invest $92,000 into a corporation); *Viyella v. Nicor*, 2020 WL 977481, *8 (S.D. Fla. Feb. 28, 2020) (registered person induced investor to purchase a promissory note for $1 million).[3] Nor is the state court "deposit account" case Defendants cite, *Lek Securities Corp. v. Elek*, 118 N.Y.S.3d 606 (N.Y. App. Div. 1st Dept. 2020), helpful to Defendants' cause. In that case the investor also purchased securities (shares of a corporation), and the FINRA member firm, LekUS, directly provided certain services to the investor pursuant to a series of written agreements with LekUS. *See id.* at 607. Once again, there are no agreements between Mr. Land and Defendants, and any agreement between Defendants and Clear Landing was ***not*** for the purchase or sale of securities. Moreover, unlike LekUS, Clear Landing is not a FINRA member, and never has been. (*See* Land Dec., ¶3.) In sum, Defendants offer no basis to find that they were "customers" of Mr. Land's under FINRA Rule 12200.

---

[3] Defendants allege that Mr. Rokah "would not have sent the funds if an investment banker was not involved," but they do not allege that Mr. Land ever held himself out to Defendants as an investment banker. Instead, they allege that *Mr. Raphael* told Mr. Rokah that Mr. Land was an investment banker. (Response, p. 6 (noting Mr. Raphael "described [Mr. Land] as the founder and president of an investment bank in New York called Clear Landing").)

**C.   Defendants' purported selling away and negligent supervision claims do not confer FINRA jurisdiction over Mr. Land.**

*1.   There is no private securities transaction or investment advice at issue to support Defendants' "selling away" claim.*

The primary argument advanced by Defendants in their response is that their selling away and failure to supervise claims against BHS confer FNRA jurisdiction over Mr. Land. Indeed, Defendants dedicate all but about six of pages of their response to this argument (*see Response*, pp. 2-21), and state that Mr. Land's purported private securities transactions with Defendants are "why this case falls under FINRA jurisdiction." (*Id.*, p. 16.) Defendants' argument, however, misses the mark entirely because the allegations in their Statement of Claim make clear that no "private securities transaction" took place.

Again, Defendants allege that Clear Landing provided "escrow" or "deposit" services. (SOC, pp. 1, 2, 6-7, 12, 14-16.) Such services simply do not constitute a private securities transaction. *See, e.g.*, *Virchow Krause Capital, LLC v. North*, 2012 WL 1952731, *2-4 (N.D. Ill. May 30, 2012) (holding investor was not "customer" of independent broker under FINRA Rule 12200 where broker provided escrow and underwriting services). Furthermore, the "verbal agreement" that Defendants allege Mr. Rokah reached with Mr. Raphael (not with Mr. Land) was an option contract for the potential sale of jewelry, i.e., goods. (*See* Response, p. 6 ("Mr. Rokah would deposit a total of $2 million in a Clear Landing bank account in exchange for an option to **purchase the exclusive ARIDO line of diamond jewelry** in the amount of $100 million")) (emphasis added.) An option to buy goods does not constitute a "private securities transaction," because goods are not securities. *See, e.g.*, *Holbrook v. Natl. Fuel Gas Distrib. Corp.*, 782 N.Y.S.2d 305, 306 (N.Y. App. Div. 4th Dept. 2004) ("section 2–725 of the Uniform Commercial Code has no application here, because it pertains only to contracts for the sale of

9

goods (see § 2–102), and the term 'goods' is specifically defined to exclude 'investment securities' (§ 2–105[1])"); *see also Gray v. Seaboard Sec., Inc.*, 14 A.D.3d 852, 853 (3d Dep't 2005) (explaining, in context of New York Deceptive Practices Act, that purchase of securities is not "consumer-oriented" because unlike typical consumer products "such as vehicles, appliances or groceries ... securities are purchased as investments, not as goods to be 'consumed' or 'used.'").

Finally, it should be exceedingly clear to the Court that, outside of Defendants depositing funds with Clear Landing to (allegedly) hold in escrow, no "transaction" whatsoever took place here; that is, no goods, and certainly no securities, were sold. (*See* SOC, p. 2.) As detailed above, Defendants' claim is simply this: Defendants deposited funds with Clear Landing, Clear Landing was supposed to return those funds, and Clear Landing did not do so. (*See id.*, pp. 14-16.) Defendants do not allege anywhere in their Statement of Claim that Mr. Land provided them investment advice that led them to deposit funds with Clear Landing. (*See generally* SOC.) And how could they make such an allegation since Defendants began sending the funds prior to ever speaking with Mr. Land? (SOC, pp. 6-7; Response, p. 7; Land Dec., ¶¶7-11.)

## Conclusion

For the reasons set forth above and in Mr. Land's initial briefing, Mr. Land is entitled to a preliminary injunction enjoining the FINRA Arbitration.

Respectfully submitted this 24th day of February, 2023.

                                      **PARKER, HUDSON, RAINER & DOBBS LLP**

                                      */s/ V. Justin Arpey*
V. Justin Arpey
New York Bar No. 5465901
Erik J. Badia
(Admitted *Pro Hac Vice*)
303 Peachtree Street, NE, Suite 3600
Atlanta, Georgia 30308
vja@phrd.com
ebad@phrd.com
Telephone: (404) 523-5300
Facsimile: (404) 522-8409

*Counsel for Plaintiff Nathaniel Land*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the within and foregoing **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** upon all parties to this matter by electronically filing a copy of same with the Court's CM/ECF system, which will automatically send an electronic copy to all counsel of record.

This 24th day of February, 2023.

                                              */s/ V. Justin Arpey*
                                              V. Justin Arpey